## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| SHARLIM MARIE RODRIGUEZ, | : | |
| *Plaintiff*, | : | |
| | : | No. 3:23-cv-306 (VAB) |
| v. | : | |
| | : | |
| TRICIA A. MACHINSKI, MD, and | : | |
| OMPRAKASH PILLA, MD, | : | |
| *Defendants*. | : | |

### RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

Sharlim Marie Rodriguez ("Plaintiff"), a sentenced prisoner in the custody of the Connecticut Department of Correction ("DOC"), filed a Complaint *pro se* under 42 U.S.C. § 1983, asserting claims for violations of her civil rights against Dr. Tricia A. Machinski and Dr. Omprakash Pillai (collectively, "Defendants"), who are both sued in their individual and official capacities. *See* ECF No. 1 ("Compl."). The Court permitted Ms. Rodriguez's Eighth Amendment medical deliberate indifference claim against Dr. Machinski and Dr. Pillai to proceed in its Initial Review Order. *See* ECF No. 10 at 6.

Before the Court is Defendants' motion for summary judgment and supporting memorandum (together, "Mot."). *See* ECF Nos. 24–24-1. The Court has reviewed the motion, the facts contained in Defendants' Local Rule 56(a)1 statement, ECF No. 24-2, Defendants' exhibits, ECF No. 24-4–24-9, Ms. Rodriguez's objection to the motion, ECF No. 29, and the record in this matter.

For the following reasons, the motion for summary judgment is **GRANTED**.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations[1]

On April 19, 2021, Ms. Rodriguez entered the custody of the DOC. ECF No. 24-2 at 1 ¶ 1. At intake, Dr. Machinski ordered bloodwork and testing. *Id.* ¶¶ 2–3. Dr. Machinski ordered bloodwork and testing at intake. *Id.* ¶¶ 2–3. On April 22, 2021, Ms. Rodriguez tested positive for Hepatitis C. *Id.* ¶ 4. But Dr. Pillai did not tell Ms. Rodriguez of her positive Hepatitis C result until a doctor's visit on March 21, 2022, nearly one year later. *Id.* ¶ 5.

On March 30, 2022, Ms. Rodriquez tested again for Hepatitis C. *Id.* ¶ 6. Several days later, Ms. Rodriguez learned she still had Hepatitis C. *Id.* ¶ 7. The next day, Ms. Rodriguez

---

[1] Because the Court can decide Defendants' motion on the first ground alone, it recites here only those facts necessary to decide whether Defendants can prevail on the affirmative defense of failure to exhaust administrative remedies. The relevant facts are taken from Defendants' Local Rule 56(a)1 statement and supporting exhibits. *See* ECF No. 24-2. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3. Defendants informed Ms. Rodriguez of this requirement. *See* ECF No. 24-3 ("Notice to Self-Represented Litigant Concerning Motion for Summary Judgment as Required by Loc. R. of Civ. Pro. 56(b)"). Ms. Rodriguez did not submit a compliant Local Rule 56(a)2 statement with her Objection to Defendants' Motion. *See* ECF No. 29.

Ms. Rodriguez is not excused from complying with the Court's procedural and substantive rules merely because she is unrepresented. *See Evans v. Kirkpatrick*, 2013 WL 638735, at *1 (W.D.N.Y. Feb. 20, 2013) (citing *Treistman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)); *see also Jackson v. Onodaga Cnty.*, 549 F.Supp.2d 204, 214 (N.D.N.Y. 2008) ("[W]hen a plaintiff is proceeding *pro se*, 'all normal rules of pleading are not absolutely suspended.'" (citation omitted)). Thus, Defendants' facts contained in their Local Rule 56(a)1 statement, where supported by evidence of record, are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)3 ("Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1, or in the Court imposing sanctions....").

Ms. Rodriguez's opposition memorandum states that "[t]he plaintiff incorporates by reference his Local Rule 56(a)(2) Statement as if fully set forth herein." ECF No. 29 at 3, but this does not comply with the Local Rules. *See supra*.

began treatment for her Hepatitis C, *id.* ¶ 8, and completed it on June 3, 2022. *Id.* ¶ 9. Bloodwork

from that date no longer showed traces of the virus. *Id.* Subsequent blood tests also no longer

showed traces of the virus. *Id.* ¶ 10.

On May 9, 2022, Ms. Rodriguez filed a Level 1 HSAR grievance seeking a remedy for

the delayed diagnosis and treatment of her Hepatitis C. ECF No. 24-2 ¶ 11; ECF No. 24-5 at 2.

Colleen Gallagher, Correctional Health Services Program Director in the DOC Central Office,

ECF No. 24-7 ¶ 2, rejected this grievance because it was "not procedurally compliant." *Id.* ¶¶ 23–

24. According to Gallagher, once a Level 1 HSAR grievance is rejected, "the administrative

remedy [is] not [] written or processed according to directive procedures and no appeals may be

processed regarding it." *Id.* ¶ 25.

But, on July 15, 2022, Ms. Rodriguez filed a Level 2 HSAR appeal. ECF No. 24-5 at 6.

She acknowledged in this Level 2 HSAR appeal that her Level 1 HSAR grievance had been

rejected. *See id.* On August 29, 2022, Ms. Rodriguez then filed a Level 3 HSAR appeal because

she had received no response to her Level 2 HSAR appeal. *See* ECF No. 24-5 at 7.

### B. Procedural History

On March 6, 2023, Ms. Rodriguez filed a Complaint *pro se* against Drs. Machinski and

Pillai in their individual and official capacities for violations of her civil rights under 42 U.S.C. §

1983. *See* Compl.

On May 26, 2023, the Court issued its initial review order allowing Ms. Rodriguez to

proceed on her Eighth Amendment medical indifference claims against Drs. Machinski and Pillai

in their individual and official capacities. *See* Initial Review Order, ECF No. 10.

On September 7, 2023, Drs. Machinski and Pillai answered the Complaint with their

affirmative defenses and a jury demand. *See* Answer, ECF No. 18.

On March 8, 2024, Drs. Machinski and Pillai filed a motion for summary judgment. Mot.

On April 23, 2024, Ms. Rodriguez filed an objection to Drs. Machinski and Pillai's motion for summary judgment. Obj. to Mot. for Summary Judgment, ECF No. 29 ("Obj.").

On November 12, 2024, the Court noticed a hearing by Zoom on the motion for summary judgment for November 20, 2024. Notice, ECF No. 31.

On November 20, 2024, the Zoom hearing on the motion for summary judgment occurred.

## II.    STANDARD OF REVIEW

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113–14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113–14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense…." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears "the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). Once the moving party meets this burden, "the party opposing summary judgment may not merely rest on the allegations or denials of his

4

pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth

'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d

255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). To defeat a motion for summary

judgment, the nonmoving party "must offer such proof as would allow a reasonable juror to

return a verdict in his favor[.]" *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

"In determining whether there are genuine issues of material fact, we are required to

resolve all ambiguities and draw all permissible factual inferences in favor of the party against

whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)

(internal quotations omitted). Although the court is required to read a self-represented "party's

papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v.

Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material

issue of fact" and do not overcome a properly supported motion for summary judgment.

*Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## III.    DISCUSSION

Defendants argue that: (1) Ms. Rodriguez failed to exhaust her administrative remedies;

and (2) her Eighth Amendment medical deliberate indifference claim fails as a matter of law. *See*

ECF No. 24-1 at 1.

The Court will address each argument in turn.

### A.  The Exhaustion of Administrative Remedies Issue

The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal

lawsuit to exhaust available administrative remedies before a court may hear her case. *See* 42

U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to

prison conditions under section 1983…or any other Federal law, by a prisoner confined in any

jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016); *Baez v. Kahanowicz*, 278 F. App'x 27, 29 (2d Cir. 2008).

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007).

The PLRA also requires "proper exhaustion"; the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined and do so properly. *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador*, 655 F.3d at 96 (exhaustion necessitates "using all steps that the [government] agency holds out and doing so properly"). The Supreme Court has held that the requirement for proper exhaustion is not met when a grievance is not filed in accordance with the deadlines established by the administrative remedy policy. *Id.* at 217–18 (citing *Woodford*, 548 U.S. at 93–95).

1. *The Administrative Remedies Available in the Connecticut Department of Correction*

The State of Connecticut DOC Administrative Directive ("A.D.") 8.9 contains administrative rules for filing Health Services Administrative Remedies ("HSAR") grievances, which "enable[s] an inmate to seek formal review of any health care provision, practice, diagnosis or treatment." A.D. 8.9(1). A copy of A.D. 8.9 is attached to Defendant's Motion. *See* ECF No. 24-6 at 2. There are three steps to the HSAR process: informal resolution, grievance, and appeal. *Id.* 8.9(3)(c)(i)–(iii). A copy of A.D. 8.9 is "available at each facility and available to

inmates upon request," *id.* 8.9(4)(a)(i), and a written summary of A.D. 8.9 is given to inmates at orientation. *Id.* 8.9(4)(a)(ii).

HSARs are limited to diagnosis/treatment and administrative issues. *See id.* 8.9(6)(a)(i)– (ii). A.D. 8.9(6) sets forth the procedures for filing an HSAR. If an HSAR request complies with these procedures, it is processed; if not, it is rejected, and the inmate is notified. *Id.* 8.9(6)(b)(i)(1)(a)–(b). The first step in the HSAR process is to seek informal resolution, including an attempt to resolve the issue verbally with a staff member. *Id.* 8.9(6)(b)(ii)(1)–(2). If that conversation does not resolve the issue, the inmate must submit a CN 9601 form stating the problem, the action requested to remedy the issue, and the date and time of the attempt at verbal resolution. *Id.* 8.9(6)(b)(ii)(3). The inmate must receive a response to the CN 9601 within fifteen business days. *Id.* 8.9(6)(b)(ii)(7).

If the inmate is unsatisfied with the response she receives from her CN 9601, she must file a Level 1 HSAR grievance on a CN 8901 form. *Id.* 8.9(6)(b)(iii)(1)–(2). The CN 8901 form must be accompanied by the previously filed CN 9601 form and response. *Id.* 8.9(6)(b)(iii)(2). If unable to provide the CN 9601 form and response with her CN 8901 form, the inmate must explain why. *Id.* 8.9(6)(b)(iii)(2)(a). The CN 8901 form and required documents "must be filed within 30 calendar days of the occurrence or discovery of the cause of or reason for the request for the Health Services Administrative Remedy." *Id.* 8.9(6)(b)(iii)(4).

Level 1 HSAR review consists of a Health Services staff member reviewing the CN 8901 form and documentation. *See id.* 8.9(6)(c)(i)(1). The CN 8901 form contains two checkboxes: "Diagnosis/Treatment" and "Administrative." *See* ECF No. 24-5 at 2. If the inmate checks the "Diagnosis/Treatment" box, she must "concisely explain the specific diagnosis or treatment decision and specify the date of diagnosis or treatment. The inmate shall explain how he or she is

dissatisfied with the diagnosis and treatment, how he or she has been affected, and concisely state the resolution desired." A.D. 8.9(6)(c)(i)(1).

After reviewing the completed CN 8901 form, the HSAR coordinator must "consult with the provider who made the decision to determine what action, if any, should be taken." *Id.* 8.9(6)(c)(i)(2)(a). If the provider decides that the existing diagnosis or treatment is appropriate, the remedy shall be denied and not subject to further appeal. *Id.* But, if the provider determines further evaluation is necessary, the provider may schedule a Health Services Review appointment. *Id.* 8.9(6)(c)(i)(2)(b).

Level 2 HSAR review consists of review of the Level 1 HSAR disposition. *See id.* 8.9(6)(c)(iii)(1). An inmate may appeal a Level 1 HSAR disposition by filing a CN 8902 form "within five (5) calendar days of receipt of the Level 1 decision." *Id.* The Regional Chief Operating Officer reviews Level 2 HSAR appeals and must issue a response within thirty business days. *Id.* 8.9(6)(c)(iii)(2)–(3). If the inmate does not receive a response within thirty days, she may file a Level 3 HSAR appeal "within 65 calendar days from the date that the initial CN 8901…was documented in the…Health Service Administrative Remedies Log." *Id.* 8.9(6)(c)(iii)(4)(a). Level 2 HSAR review is "the final level of review of all remedies unless the appeal meets the requirements for a Level 3 review." *Id.* 8.9(6)(c)(iii)(5).

Level 3 HSAR reviews are "restricted to appeals of Level 2 decisions." *Id.* 8.9(6)(c)(iv)(1). Level 3 HSAR reviews must be filed within five days of receiving a Level 2 HSAR decision, *id.* 8.9(6)(c)(iv)(2), or within sixty-five days of filing a CN 8902 if no decision on the CN 8902 was received within thirty business days. *Id.* 8.9(6)(c)(iv)(2)(a). Level 3 HSAR reviews are conducted by the Chief Operating Officer and are "the final level of review of all remedies." *Id.* 8.9(6)(c)(iii)(3), (5).

2.    *Ms. Rodriguez's Specific Efforts to Exhaust Here*

The undisputed facts show that Ms. Rodriguez filed a CN 8901 seeking Level 1 HSAR review for the delayed diagnosis and treatment of her Hepatitis C on May 9, 2022. *See* ECF No. 24-2 ¶ 11; ECF No. 24-5 at 2. Gallagher stated in her Declaration that Ms. Rodriguez's Level 1 HSAR grievance "was not procedurally compliant." ECF No. 24-7 ¶ 23. Gallagher's statement is conclusory and does not explain *why* Ms. Rodriguez's Level 1 HSAR grievance "was not procedurally compliant." But Ms. Rodriguez's Level 1 HSAR grievance, viewed in light of A.D. 8.9 and its subparts, indisputably shows that Ms. Rodriguez's Level 1 HSAR grievance was procedurally incompliant for two reasons.

First, Ms. Rodriguez's Level 1 HSAR grievance was untimely. A Level 1 HSAR grievance "must be filed within 30 calendar days of the occurrence or discovery of the cause of or reason for the request for the Health Services Administrative Remedy." A.D. 8.9(6)(b)(iii)(4). This is stated on the CN 8901 form Ms. Rodriguez submitted. *See* ECF No. 24-5 at 2. Ms. Rodriguez's reason for filing the Level 1 HSR grievance was because she was not notified by prison medical staff that she had Hepatitis C until March 21, 2022. *See id*. Thus, the "occurrence or discovery of the cause of or reason for the request" for filing the Level 1 HSAR grievance was March 21, 2022.

But Ms. Rodriguez did not file her grievance until May 9, 2022, *id.*—well beyond the thirty-day deadline for filing her Level 1 HSAR grievance. Ms. Rodriguez's Level 1 HSAR grievance was therefore untimely and should have been rejected under the Administrative Directives. *See* A.D. 8.9(4)(h) (stating "[a]ny request for a Health Services Administrative Remedy that does not adhere to the time limitations set forth shall be rejected").

Second, Ms. Rodriguez's untimely Level 1 HSAR grievance did not contain the required

information.[2] Ms. Rodriquez checked the box labeled "Diagnosis/Treatment" on her Level 1

HSAR grievance form.[3] ECF No. 24-5 at 2. An inmate filing a Level 1 HSAR grievance related

to diagnosis and treatment must "concisely explain the specific diagnosis or treatment decision

and specify the date of diagnosis or treatment." A.D. 8.9(6)(c)(i)(1). Ms. Rodriguez's Level 1

HSAR grievance satisfies this first requirement because she explains her diagnosis and treatment

history with corresponding dates. *See* ECF No. 24-5 at 2.

But the inmate is also required to "explain how he or she is dissatisfied with the diagnosis

and treatment, how he or she has been affected, and concisely state the resolution desired." A.D.

8.9(6)(c)(i)(1). Ms. Rodriguez explains how she was dissatisfied with the treatment (explaining

that "it took almost an entire year to tell [her] about [her] diagnosis") and explains how she was

affected (explaining that she "could have treated this problem way sooner" and that "she [did

not] know how it has affected [her] liver" or whether she "passed it to anyone else"). ECF No.

24-5 at 2.

She does not, however, "state the resolution desired," as required by A.D. 8.9(6)(c)(i)(1).

---

[2] Defendants argue Ms. Rodriguez's grievance is procedurally incompliant because it "failed to include the requisite CM 9201 form indicating that she attempted to resolve the issue informally." ECF No. 24-1 at 12. But A.D. 8.9(6)(b)(3)(iii)(2) permits an inmate to explain the absence of the form. Ms. Rodriguez explained in her HSAR Level 1 grievance that the form was not attached because she did not receive a response to her informal grievance. *See* ECF No. 24-5 at 2. This explanation satisfies A.D. 8.9(6)(b)(3)(iii)(2) and would not be a ground for rejection.
[3] Defendants maintain that Ms. Rodriguez's Level 1 HSAR grievance was rejected because Ms. Rodriguez checked the "Diagnosis/Treatment" box instead of the "Administrative" box on the CN 8901. *See* ECF No. 24-1 at 12. But under A.D. 8.9(6)(a)(i), the "Diagnosis/Treatment" category includes "review of diagnosis or treatment decision…including *the decision to provide no treatment*, relating to the individual inmate." (emphasis added). Ms. Rodriguez's complaint that she did not receive treatment for her Hepatitis C in the months after she tested positive for it, *see* ECF No. 24-5, fairly falls within the "Diagnosis/Treatment" category as it is defined in A.D. 8.9(6)(a)(i). Thus, the Court disagrees with Defendants that this would be a ground for rejection.

Ms. Rodriguez states in her Level 1 HSAR grievance that "[a]t this point, I don't know what you can do for me[.] I'm on the treatment[;] I just don't appreciate the neglect I went thr[ough] and the failure to treat me [a]t the proper time[,] which may have caused complications for me in the future." ECF No. 24-5 at 3.

The "resolution desired" is critical to the Level 1 HSAR review process described in A.D. 8.9(6)(c)(i). Once the HSAR coordinator receives an inmate's Level 1 HSAR grievance, the HSAR coordinator "shall consult with the provider who made the decision to determine what action, if any, should be taken." A.D. 8.9(6)(c)(i)(2)(a). If an inmate does not state "the resolution desired," the HSAR coordinator cannot "consult[ ] the provider who made the decision to determine what action, if any, should be taken," A.D. 8.9(6)(c)(i)(2)(a), because the inmate has not requested any action to be taken.

Because Ms. Rodriguez's Level 1 HSR grievance was not filed within 30 days of the "occurrence or discovery of the cause of or reason for the request" under AD 8.9(6)(b)(iii)(4) and because it did not "state the resolution desired" as required by A.D. 8.9(6)(c)(i)(1), the undisputed facts show that Ms. Rodriguez's Level 1 HSR grievance was properly rejected for (1) being untimely, *see* A.D. 8.6(4)(h), and (2) failing to contain the necessary information under A.D. 8.9(6)(c)(i)(1). *See* A.D. 8.6(6)(c)(ii)(2)(a)(i) ("If the Health Services Administrative Remedy Coordinator finds the request not to be in compliance, then the Health Services Administrative Remedy shall be rejected, and the inmate shall so be notified.").

Thus, even though Gallagher's statement that Ms. Rodriguez's Level 1 HSAR grievance "was not procedurally compliant," ECF No. 24-7 ¶ 23, is conclusory, Ms. Rodriguez's Level 1 HSAR grievance, ECF No. 24-5 at 2, viewed in light of A.D. 8.9 and its subparts, independently

supports Gallagher's conclusion with indisputable evidence. Gallagher's statement, where

supported by evidence of record, is thus deemed admitted. *See* D. Conn. L. Civ. R. 56(a)3.

An inmate can correct a procedurally deficient Level 1 HSAR grievance by resubmitting

a corrected Level 1 HSAR grievance within five calendar days after the initial Level 1 HSAR

grievance is rejected. *See* A.D. 8.6(6)(c)(ii)(2)(a)(i)(1). If the corrected Level 1 HSAR grievance

does not correct the defect, "the request for the Health Services Administrative Remedy shall be

rejected and not subject to further appeal." *Id*. The record does not show that Ms. Rodriguez

attempted to correct the defect in her Level 1 HSAR grievance by submitting a corrected CN

8901. Nor does Ms. Rodriguez maintain in her response that she did. But even if Ms. Rodriguez

had submitted a corrected Level 1 HSAR grievance that "state[d] the resolution desired," as

required by A.D. 8.9(6)(c)(i)(1), that corrected grievance would have still been untimely under

A.D. 8.9(6)(b)(iii)(4), for reasons described above.

Even if Ms. Rodriguez's Level 1 HSAR grievance was sufficient and improperly

rejected, proper exhaustion required Ms. Rodriguez to use all steps required by the

administrative review process applicable to the institution in which she is confined and to do so

properly. *See Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (quoting *Woodford*, 548

U.S. at 83–84) (noting that "the Supreme Court held that the exhaustion requirement of the

PLRA cannot be satisfied by an 'untimely or otherwise procedurally defective administrative

grievance or appeal' and that the PLRA requires 'proper exhaustion,' which 'means using all

steps that the agency holds out, and doing so properly (so that the agency addresses the issues on

the merits).'"); *Urbanski v. Dep't of Correction*, No. 3:18-CV-01323(VLB), 2019 WL 6683047,

at *6 (D. Conn. Dec. 5, 2019) (quotation omitted) (noting that "[t]o properly exhaust a § 1983

claim in Connecticut, a prisoner must comply with *all* steps set forth in Directive 9.6, including

12

deadlines and utilization of each step of the administrative appeal process." (emphasis original)).

Thus, proper exhaustion required Ms. Rodriguez to seek informal resolution, A.D.

8.9(6)(b)(ii)(1), file a Level 1 HSAR grievance, *id.* 8.9(6)(b)(iii)(1), file a corrected Level 1

HSAR grievance if the initial Level 1 HSAR grievance was procedurally deficient, *id.*

8.9(6)(c)(ii)(2)(a)(i)(1), file a Level 2 HSAR appeal, *id.* 8.9(6)(c)(iii)(1), and file a Level 3

HSAR appeal. *Id.* 8.9(6)(c)(iv)(2).

Ms. Rodriguez attempted to do this by filing a Level 2 HSAR appeal, *see* ECF No. 24-5,

despite her Level 1 HSAR grievance being rejected and "not subject to further appeal." *See* ECF

No. 24-5 at 4. But an inmate can only "request an administrative reconsideration of a Level 1

disposition by utilizing a CN 8902, Appeal of Health Services Administrative Remedy Form-

Level 2, within five (5) calendar days of receipt of the Level 1 decision." A.D. 8.6(6)(c)(iii)(1).

Ms. Rodriguez received her decision on June 20, 2022. *See* ECF No. 24-5 at 5. And, Ms.

Rodriguez did not file her Level 2 HSAR appeal until July 15, 2022, *id.* at 6—well past the time

for filing a Level 2 HSAR appeal under A.D. 8.6(6)(c)(iii)(1).

Based on the undisputed facts, Ms. Rodriguez's Level 1 HSAR grievance was

procedurally deficient under A.D. 8.9 and its subparts and her Level 2 HSAR appeal was

untimely. Therefore, Ms. Rodriguez did not properly exhaust the administrative remedies

available to her. *See, e.g.*, *Pommer v. Vaughn*, No. 3:07-CV-537(WWE), 2009 WL 1490570, at

*4 (D. Conn. May 27, 2009) (concluding that plaintiff had not exhausted his administrative

remedies under the Department of Corrections Administrative Directives because his "grievance

was rejected and [ ] the appeal of the dismissal was filed late"); *Riles v. Bannish*, No. 3:10-CV-

652 (RNC), 2015 WL 5796999, at *2 (D. Conn. Sept. 30, 2015), *aff'd sub nom.*, *Riles v.

Buchanan*, 656 F. App'x 577 (2d Cir. 2016) (concluding that "plaintiff did not properly exhaust

the administrative remedies available to him because he did not initiate the process by submitting an Inmate Request Form seeking informal resolution, and his Level 1 HSAR grievance was procedurally deficient").

Exhaustion of administrative remedies is an affirmative defense. Thus, the defendant bears the burden of proof. *See Jones*, 549 U.S. at 216. Once the defendant presents evidence establishing that administrative remedies were not exhausted before the inmate filed her lawsuit, as Defendants have done here, the plaintiff must establish that administrative remedy procedures were not available to her under *Ross v. Blake*, 578 U.S. 632 (2016) or present evidence showing that she did exhaust her administrative remedies. *See Smith v. Kelly*, 985 F.Supp.2d 275, 284 (N.D.N.Y. 2013) ("[O]nce a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion [or] unavailability"). Because Ms. Rodriguez has failed to provide evidence that she exhausted her administrative remedies, she must prove that administrative remedies were unavailable to her under *Ross*. *See Burrell v. Quiros*, No. 3:21-CV-393 (KAD), 2023 WL 8527176, at *4 (D. Conn. Dec. 8, 2023) (citing *Smith*, 985 F.Supp.2d at 284).

The *Ross* Court identified three circumstances in which a court could find that administrative remedies were not available to prisoners under the PLRA. *Ross*, 578 U.S. at 643–44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643. "Next, an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates

from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* The Second Circuit has noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016). In considering the issue of availability, however, the Court is guided by these illustrations. *See Mena v. City of New York*, No. 13-cv-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Ms. Rodriguez bears the burden of proving that exhaustion was unavailable to her under *Ross*. *See Burrell*, *supra*, at *4. Because Ms. Rodriguez has presented no evidence in response to the Defendants' Motion for Summary Judgment, she cannot meet her burden of showing this. Because record evidence shows that Ms. Rodriguez was able to utilize the administrative grievance process, albeit without success, there is no evidence in the record that "officers [were] unable or consistently unwilling to provide any relief to aggrieved inmates," that the "administrative remedy scheme [was] so opaque that it [was] incapable of use," or that "prison administrators thwart[ed] inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643.

Ms. Rodriguez does argue in an unsworn explanation in her response that "she was not told that there was a problem with her level one grievance." ECF No. 29 at 7. Ms. Rodriguez therefore "believed that her grievance was exhausted as it was not subjected to further appeal, not that it was rejected because it did not meet the requirements of a proper grievance." *Id.* This explanation fails for two reasons.

First, the Administrative Directives do not require officials to provide a reason for the rejection of the grievance—only notification of the objection. *See* A.D. 8.9(6)(c)(ii)(2)(a)(i) ("If the Health Services Administrative Remedy Coordinator finds the request not to be in

compliance, then the Health Services Administrative Remedy shall be rejected and the inmate

shall so be notified."). According to Gallagher, "[i]nmates are required to adhere to the

procedure outlined in Admin. Dr. 8.9," ECF No. 24-7 ¶ 13, which is readily available to inmates.

*See* A.D. 8.9(4)(a)(i)–(ii). Therefore, the inmate must identify the reason for rejection in the

Administrative Directives and cure the defect, if possible. *See* A.D.8.9(6)(c)(ii)(2)(a)(i)(1).

Second, Ms. Rodriguez's "belie[f] that her grievance was exhausted as it was not

subjected to further appeal," ECF No. 29 at 7, is not supported by her subsequent filings of Level

2 and Level 3 HSAR appeals. ECF No. 24-5 at 6–7. If Ms. Rodriguez thought her grievance was

exhausted and not subject to further appeal, there would be no reason to file Level 2 and 3 HSAR

appeals. Even if the Court accepted Ms. Rodriguez's statement at face value, an inmate's

mistaken belief that [s]he has exhausted h[er] administrative remedies, even where that belief

seems reasonable, does not make the administrative remedy unavailable." *Kearney v. Gebo*, No.

915CV253MADDJS, 2017 WL 61951, at \*2 n.1 (N.D.N.Y. Jan. 4, 2017), *aff'd*, 713 F.App'x 39

(2d Cir. 2017) (citing *Ross*, 136 S.Ct. at 1858).

Accordingly, Ms. Rodriguez has failed to show that an administrative remedy was

unavailable in order to overcome the Defendants' affirmative defense of non-exhaustion, and

Defendants' motion for summary judgment for failure to exhaust available administrative

remedies will be granted.

**B.  Eighth Amendment Medical Deliberate Indifference Claim**

Because Ms. Rodriguez has failed to rebut the affirmative defense of failure to exhaust

her administrative remedies or otherwise provide evidence that the administrative remedies were

unavailable to her, summary judgment must be granted. *See Riles*, 656 F. App'x at 579

(affirming district court's dismissal based on inmate's failure to exhaust, under Administrative

Directive 9.6, his excessive force claim against correctional staff). And this Court need not reach the merits of Ms. Rodriguez's claim or Defendants' defense to it. *See, e.g.*, *Feaster v. U.S. Bureau of Prisons*, 37 F. App'x 15, 17 (2d Cir. 2002) (declining to reach question of qualified immunity on unexhausted claim); *Taylor v. Halladay*, No. 9:09-CV-0385, 2010 WL 3120036, at *9 (N.D.N.Y. July 1, 2010) (declining to reach qualified immunity defense on unexhausted claim); *Scott v. Uhler*, 9:16-CV-403 (TJM/CFH), 2019 WL 5197139, at *6 n. 10 (N.D.N.Y. July 31, 2019) ("As the undersigned concludes that [the] plaintiff has failed to exhaust his administrative remedies prior to commencing suit or that administrative remedies were unavailable to him, the undersigned declines to reach the merits of the plaintiff's [Fourteenth Amendment] claims."); *Oliver v. Outhouse*, No. 9:06-CV-1412 (LEK/RFT), 2008 WL 508909, at *5 (N.D.N.Y. Feb. 21, 2008) ("Because we find that [the p]laintiff failed to exhaust his administrative remedies, we need not address the merits of his Eight Amendment claim nor the defenses proffered in response.").

This Court nevertheless alternatively reviews Ms. Rodriguez's Eighth Amendment medical deliberate indifference claim and determines that this claim would fail.

To state a plausible Eighth Amendment claim, an inmate must allege facts "showing the offending official's 'deliberate indifference to [their] serious medical needs.'" *Thomas v. Wolf*, 832 F. App'x 90, 92 (2d Cir. 2020) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). There are two elements to a claim for deliberate indifference to medical needs.

The first element is objective. The inmate must "show that [s]he was 'actually deprived of adequate medical care' by an official's failure 'to take reasonable measures in response to a [sufficiently serious] medical condition.'" *Id*. (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279-

80 (2d Cir. 2006) (internal quotation marks omitted)). Establishing an objectively serious deprivation requires the court to make two separate inquiries.

First, the court must determine whether the inmate "was actually deprived of adequate medical care." *Salahuddin*, 467 F.3d at 279. The medical providers are only required to have "act[ed] reasonably." *Id*. The second inquiry requires the court to determine "whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id*. at 280. Thus, although the objective element sometimes is referred to as the seriousness of the medical need, that is only one factor evaluated in determining the seriousness of the deprivation of medical care. *See id*.

If the claim is for denial of any treatment, the court will consider "whether the inmate's medical condition is sufficiently serious." *Id*. A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that can cause death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). A medical condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2000). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects the individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

18

If, however, the claim is for a delay in treatment, the court focuses on the challenged delay rather than merely on the underlying medical condition to determine whether the alleged deprivation is sufficiently serious. The court considers "the seriousness of the particular risk of harm that resulted from 'the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Bellotto v. County of Orange*, 248 Fed. App'x 232, 236 (2d Cir. 2007) (quoting *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003)). "A delay in treatment does not violate the constitution unless it involved an act or failure to act that evinces a conscious disregard of a substantial risk of serious harm." *Rodriguez v. Doe*, No. 3:22-CV-763(MPS), 2023 WL 184253, at *3 (D. Conn. Jan. 13, 2023) (citations and internal quotation marks omitted).

The second element is subjective. The inmate must show "that the official acted with a culpable state of mind of 'subjective recklessness,' such that the official knew of and consciously disregarded 'an excessive risk to inmate health or safety.'" *Wolf*, 832 F. App'x at 92 (citations omitted). Allegations constituting negligence or medical malpractice are insufficient to support an Eighth Amendment deliberate indifference claim. *Id*. (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) ("To meet the subjective element, the plaintiff must show that the defendant acted with 'more than mere negligence.'" (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994))). Thus, for a claim based on delay of treatment, the inmate must show that the defendant "delayed care as a form of punishment, ignored a life-threatening and fast-degenerating condition for several days, or delayed major surgery." *Myrie v. Calvo*, 615 F. Supp. 2d 246, 248 (S.D.N.Y. 2009) (citation omitted); *see also Stewart v. City of New York*, No. 15-CV-4335, 2018 WL 1633819, at *8-9 (S.D.N.Y. Mar. 31, 2018) (dismissing deliberate indifference claim where plaintiff did not allege

that the defendant "acted intentionally to delay the provision of medical treatment in a way that subjected [the plaintiff] to an excessive risk of harm"); *Bell v. Jendell*, 980 F. Supp. 2d 555, 562 (S.D.N.Y. 2013) (allegation of delay in provision of medical treatment without allegation that delay was intentional or reckless is insufficient to support Eighth Amendment deliberate indifference claim) (collecting cases).

Drs. Machinski and Pillai argue that Ms. Rodriguez's medical indifference claims fail because: (1) Ms. Rodriguez's delayed notification of her positive test for Hepatitis C did not rise to the level of a serious medical need; (2) Ms. Rodriguez cannot show that she was deprived of adequate medical care; and (3) Ms. Rodriguez cannot show that Drs. Machinski and Pillai intentionally deprived her of medical care.[4] *See* Mot. at 15–21.

First, Drs. Machinski and Pillai argue that while Ms. Rodriguez was "unfortunately" not told about her positive test result for Hepatitis C until a year later, because she was eventually successfully cured of Hepatitis C and her liver function returned to normal, the issue here does not rise to the level of a serious medical need. *See id*. at 17–19.

Second, Drs. Machinski and Pillai argue that Ms. Rodriguez cannot show that she was denied medical care because she was eventually adequately treated and has not shown that she suffered any symptoms from Hepatitis C before she was treated. *See id.* at 19–20.

Third, Drs. Machinski and Pillai argue that they were unaware of Ms. Rodriguez's positive test result until April 2022, and that unawareness was at most done with negligence, not

---

[4] Drs. Machinski and Pillai also argue that they are entitled to qualified immunity, but the Court does not need to and thus does not address those arguments here. *See* Mot.; *see, e.g.*, *Feaster v. U.S. Bureau of Prisons*, 37 F. App'x 15, 17 (2d Cir. 2002) (declining to reach question of qualified immunity on unexhausted claim); *Taylor v. Halladay*, No. 9:09-CV-0385, 2010 WL 3120036, at *9 (N.D.N.Y. July 1, 2010) (declining to reach qualified immunity defense on unexhausted claim).

purposefulness or reckless disregard which would be needed to prove deliberate indifference. *Id.* at 20–21.

Ms. Rodriguez argues in response that: (1) the Hepatitis C diagnosis did pose an unreasonable risk of serious damage to her health; (2) Drs. Machinski and Pillai were or should have been aware of the positive Hepatitis C test result when it first occurred in 2021; and (3) Drs. Machinski and Pillai were deliberately indifferent because any reasonable person would have known how harmful leaving Hepatitis C untreated was. *See* Obj. at 8–10.

First, Ms. Rodriguez argues that Hepatitis C did pose an unreasonable risk of serious damage to her health because Hepatitis C could cause damage to the liver, serious health problems and death according to the Center for Disease Control. *See id.* at 8.

Second, Ms. Rodriguez argues that Dr. Machinski was or should have been aware of the of the April 2021 positive Hepatitis C test result because she (1) signed for Ms. Rodriguez's bloodwork, and (2) said that Ms. Rodriguez's bloodwork was fine even when Ms. Rodriguez was complaining about "fatigue, lower back pain, swollen and painful hands and feet and difficulty concentrating and paying attention." *Id.* at 9. Ms. Rodriguez also argues that Dr. Pillai was or should have been aware because she was the infectious disease doctor who should be aware of the results of all bloodwork including the April 2021 results. *Id.*

Finally, Ms. Rodriguez argues that Drs. Machinski and Pillai were deliberately indifferent to her serious medical needs because Hepatitis C is a serious medical condition if left untreated and any reasonable person would know that leaving it untreated was detrimental to her health. *Id.* at 10.

The Court agrees with Ms. Rodriguez that the delay in treatment for her Hepatitis C diagnosis was a denial of a serious medical need, but agrees with Drs. Machinski and Pillai that

they were not deliberately indifferent to Ms. Rodriguez's serious medical needs because their unawareness of Ms. Rodriguez's positive test result was not purposeful or with reckless disregard.

To satisfy the first prong in an Eighth Amendment medical deliberate indifference claim, an inmate must show that medical providers acted unreasonably such that they were actually deprived of medical care that caused or likely will cause harm to the prisoner. *Salahuddin*, 467 F.3d at 279–280 ("The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious. . . . The first inquiry is whether the prisoner was actually deprived of adequate medical care. As the Supreme Court has noted, the prison official's duty is only to provide reasonable care. . . . Second, the objective test asks whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner."). A delay rather than a denial of treatment will not violate the constitution unless it involved an act or failure to act that evinces "a conscious disregard of a substantial risk of serious harm." *Rodriguez*, 2023 WL 184253, at *3 (citations and internal quotation marks omitted).

"It is well-established that Hepatitis C is sufficiently serious to satisfy the objective prong of the test for deliberate indifference." *Parks v. Blanchette*, 144 F. Supp. 3d 282, 314 (D. Conn. 2015) (citing *Hilton v. Wright*, 928 F.Supp.2d 530, 547–48 (N.D.N.Y.2013) (noting that it is "well-established that HCV is a serious medical condition.") (citing *Hatzfeld v. Eagen*, No. 9:08–cv–283, 2010 WL 5579883, at *10 (N.D.N.Y. Dec. 10, 2010) (collecting cases))). Thus, Ms. Rodriguez's delay in Hepatitis C satisfies the first prong of a deliberate indifference claim.

To satisfy the second prong and succeed on showing a claim of deliberate indifference, an inmate must show "that the official acted with a culpable state of mind of 'subjective recklessness' such that the official knew of and consciously disregarded 'an excessive risk to inmate health or safety.'" *Wolf*, 832 F. App'x at 92 (citations omitted). This is where Ms. Rodriguez's claim falls short.

While Drs. Machinski and Pillai perhaps should have been aware of the first positive Hepatitis C test results in April 2021 because they dealt with Ms. Rodriguez's bloodwork, there is no evidence in this record that this failure to notice the April 2021 test result was done with any intention.[5] A failure occurring out of negligence without some showing of intention is not enough to show deliberate indifference. *See Darnell v. Pineiro*, 849 F.3d 17, 36 (2d Cir. 2017) (for deliberate indifference claims, "[a] detainee must prove that an official acted intentionally or recklessly, and not merely negligently"); *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) ("The deliberate-indifference standard 'require[es] a showing that the official was subjectively aware of the risk[.]'") (citing *Farmer v. Brennan*, 511 U.S. 825, 829 (1994)); *Singletary v. Russo*, 377 F. Supp. 3d 175, 193 (E.D.N.Y. 2019) (granting summary judgment for a doctor defendant who was not actually aware of a clerical error that caused harm); *Parks v. Blanchette*, 144 F. Supp. 3d 282, 317 (D. Conn. 2015) (granting summary judgement for a doctor

---

[5] Based on this record, the April 2021 test result had not been added to Ms. Rodriguez's flowchart. *See* Declaration of Trisha Machinski, MD at ¶ 7, ECF No. 24-9 ("Upon review of the Plaintiff's records, it appears the lab results were returned with a positive Hepatitis C result in April 2021, but were not added to the flow chart timely."). And, at the November 20, 2024 motion hearing, counsel for Drs. Machinski and Pillai further represented that the nursing staff, not either Dr. Machinski or Dr. Pillai, had responsibility for adding the test result to the flowchart. Since this incident, however, the DOC has updated their procedure for positive Hepatitis C cases so that "all lab results with a positive finding [are] sent to a single liaison, who compiles such data and ensures timely notification and treatment." Mot at 18.

defendant who did not know or disregard that withholding treatment would subject the plaintiff to excessive risk of harm).

Accordingly, despite the delay in treatment for Hepatitis C being a serious medical need, without some showing of intentionality in that delay, Ms. Rodriguez's deliberate indifference claims fails to show a genuine dispute of material fact sufficient to survive the motion for summary judgment, and Defendants' motion for summary judgment as to the Eighth Amendment deliberate indifference claim would be granted, even if Ms. Rodriguez had exhausted her administrative remedies.

## IV.    CONCLUSION

Because there is no genuine issue of material fact regarding Ms. Rodriguez's failure to exhaust her administrative remedies, and Ms. Rodriguez deliberate indifference claim also fails, the Court **GRANTS** the Defendants' Motion for Summary Judgment, ECF No. 24, and **DISMISSES** Ms. Rodriguez's Complaint, ECF No. 1, with prejudice.

The Clerk of Court is respectfully directed to enter judgment and close this case.

**SO ORDERED** at New Haven, Connecticut, this 22nd day of November, 2024.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE